## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| RICHARD D. PASCHALL, | ) | Chapter 7 |
| | ) | Case No. 07-32048 |
| Debtor. | ) | |
| | ) | Adv. Proc. No. 08-03049 |
| | ) | |
| | ) | |
| DEBORAH J. PRUNTY and THE | ) | |
| DEBORAH J. PRUNTY LIVING TRUST, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09CV220-HEH |
| | ) | |
| ROY M. TERRY, TRUSTEE, | ) | |
| | ) | |
| Appellee. | ) | |

### MEMORANDUM OPINION
### (Affirming Order of the Bankruptcy Court and Remanding for further Proceedings)

THIS MATTER is before the Court on appeal from an Order of the United States

Bankruptcy Court for the Eastern District of Virginia ("Bankruptcy Court") issued on

February 20, 2009, awarding the Trustee summary judgment on Counts I and V and

denying Appellants' cross motion for summary judgment. The parties have filed

extensive memoranda of law in support of their respective positions. The Court will

dispense with oral argument because the facts and legal contentions are adequately

presented in the materials before the Court, and argument would not aid in the decisional

process. Based on an extensive review of the record in this case and for the reasons

stated herein, the Court will affirm the Order of the Bankruptcy Court.

## I.   BACKGROUND

**A.**   **Procedural and Factual History**

Richard D. Paschall ("Debtor") voluntarily filed the current Chapter 7 bankruptcy proceeding on June 3, 2007. The Trustee commenced this adversary proceeding on April 4, 2008, seeking to avoid the transfer of the Debtor's interests in real property to his ex-wife, Deborah J. Prunty ("Prunty"), to recover the property interests or their value for the bankruptcy estates, and to sell the real properties at issue under 11 U.S.C. § 363(h). The parties stipulated to all the pertinent facts at the proceeding below, and the Bankruptcy Court adopted the stipulated facts.

The Debtor and Prunty married on June 29, 2002. On July 10, 2003, Prunty sold her separate property, a home located in San Jose, California, for $586,285.73. Two weeks later, Prunty paid a deposit to purchase real property located at 7104 Jocelyn Court in Warrenton, Virginia, (the "Fauquier County Property"), on which the couple intended to build a residence. Prunty paid cash at the closing for the Fauquier County Property, using the proceeds she received from the sale of her California home as well as other separate property investments. Prunty purchased the Fauquier County Property solely from assets that she owned before her marriage to the Debtor. The deed conveying title to Prunty and the Debtor as tenants by the entirety was recorded in Fauquier County on February 2, 2004.

Shortly thereafter, Prunty and the Debtor borrowed $250,000 from Southern Trust Mortgage LLC ("Southern Trust"), which was secured by a deed of trust recorded on February 24, 2004. The loan proceeds were deposited into the couple's joint checking account. The Debtor used a portion of the loan proceeds to satisfy his premarital and marital unsecured debt. The Debtor then gave Prunty the remaining $136,000 of the loan proceeds.

In the summer of 2004, the Debtor convinced Prunty to purchase real property located at 15018 Rosebay Forest Drive in Midlothian, Virginia, (the "Midlothian Property"), which was owned by the Debtor's mother and stepfather. Prunty paid $42,767.26 from premarital assets at the closing on the Midlothian Property and financed the balance of the purchase with a loan for $183,200 from Southern Trust. The deed conveying title to Prunty and the Debtor as tenants by the entirety was recorded in Chesterfield County on September 8, 2004.

On March 2, 2005, Prunty and the Debtor executed a Marital Agreement, which provided that Prunty would become the exclusive owner of both the Fauquier County Property and the Midlothian Property (collectively, the "Properties") in exchange for cash payments to the Debtor. In turn, the Debtor agreed to convey his interest in the Properties by quitclaim deeds to Prunty in her capacity as trustee of the Deborah J. Prunty Living

3

Trust (the "Trust").[1]  At the time the parties executed the Marital Agreement, the Debtor

was not insolvent.

The Debtor became dissatisfied with the terms of the Marital Agreement and

insisted on entering into a buyout agreement, which would expedite Prunty's cash

payments to the Debtor.  The Debtor and Prunty signed the Buyout Agreement on March

31, 2005.  At that time, the Debtor was not insolvent.

Prunty paid the Debtor all sums to which he was entitled under the Marital

Agreement and the Buyout Agreement, but the Debtor did not sign the quitclaim deeds

conveying his interest in the Properties to the Trust. The Debtor did not execute the

quitclaim deeds conveying his interest in the Properties until August 23, 2006.  The

quitclaim deed conveying the Debtor's interest in the Fauquier County Property was

recorded on August 25, 2006.  The quitclaim deed conveying the Debtor's interest in the

Midlothian Property was recorded on September 5, 2006.  At the time the quitclaim deeds

were recorded, the Debtor was insolvent.

Meanwhile, Prunty had filed for uncontested divorce in Fauquier County on

January 30, 2006.  The Circuit Court conducted a hearing in the divorce proceeding on

July 31, 2006, and entered a Final Decree of Divorce ("Final Decree"), which

incorporated by reference the Marital Agreement, on September 13, 2006.  The Final

---

[1] In two deeds of distribution, recorded on November 8, 2006, and December 5,
2006, respectively, the Trust conveyed its interest in the Properties to Prunty for no
consideration.

4

Decree was recorded in the law order books and the chancery order books in the records room of the Fauquier County Clerk's Office, but not until June 3, 2007—the date the Debtor filed his Chapter 7 proceeding. Neither the Final Decree nor the Marital Agreement was ever recorded in the land records of Fauquier County or Chesterfield County.

On April 4, 2008, the Trustee commenced this adversary proceeding against Prunty and the Trust, seeking to avoid the transfer of the Debtor's interests in the Properties as preferential under 11 U.S.C. § 547 (Count I); to avoid the transfers as fraudulent conveyances under 11 U.S.C. § 548 (Count II); to avoid the transfers as fraudulent conveyances under Virginia law (Count III); to avoid the transfers as voluntary conveyances under Virginia law (Count IV); to recover the Properties or their value for the bankruptcy estate under 11 U.S.C. § 550 (Count V); and to sell the Properties under 11 U.S.C. § 363(h) (Count VI). The parties filed cross motions for summary judgment on all counts, and the Bankruptcy Court held a hearing on the motions on January 8, 2009. At the hearing, the Bankruptcy Court awarded summary judgment to Prunty and the Trust on Counts II, III, and IV and took the parties' arguments as to Counts I, V, and VI under advisement. In its opinion dated February 20, 2009, the Bankruptcy Court awarded summary judgment to the Trustee on Counts I and V, but found that material facts remained in dispute as to Count VI. Accordingly, the Bankruptcy Court denied the parties' motions for summary judgment as to Count VI. Prunty and the Trust filed their

5

Notice of Appeal on March 1, 2009.

**B.    Bankruptcy Court Decision**

Based on the stipulated facts, the Bankruptcy Court concluded that the Trustee had

established all the elements necessary to avoid the transfers under 11 U.S.C. § 547(b).

The Bankruptcy Court ruled that the transfers of the Properties occurred on August 23,

2006—when the Debtor executed the quitclaim deeds—while the Debtor was insolvent.

It also ruled that Prunty qualified as a creditor and an insider of the Debtor and that the

transfers were made for Prunty's benefit to account for an antecedent debt owed by the

Debtor.  Finally, the Bankruptcy Court concluded that the transfers were made during the

one-year period preceding the commencement of the Chapter 7 proceeding and that the

transfers allowed Prunty to recover more than she would have otherwise been entitled to

in the case.  Finding that the Trustee had proven all of the requisite elements in 11 U.S.C.

§ 547, the Bankruptcy Court awarded summary judgment to the Trustee and avoided the

transfers of the Properties to Prunty.

Having avoided the transfers, the Bankruptcy Court stated that title in the

Properties reverted to Prunty and the Debtor as tenants by the entirety.  Entry of the Final

Decree converted the tenancy by the entirety estate in the Properties into a tenancy in

common.  Therefore, the Bankruptcy Court ruled that the Trustee is entitled to recover the

Debtor's interest in the Properties for the benefit of his bankruptcy estate pursuant to 11

U.S.C. § 550.  As such, the Bankruptcy Court declared that Prunty and the Trustee now

6

own the Properties as tenants in common.  The Bankruptcy Court ruled, however, that the

Trustee may not sell the Properties at this time because he has not established that he is

entitled to summary judgment on Count VI under 11 U.S.C. § 363(h).

Prunty and the Trust appealed the Bankruptcy Court's decision to avoid the

transfer to this Court.  Specifically, they challenge 1) the Bankruptcy Court's

identification of the transfer date; 2) the Bankruptcy Court's conclusion that the Debtor

had an interest in the Properties at the time of the transfer; 3) the Bankruptcy Court's

ruling that Prunty qualified as a creditor of the Debtor; 4) the Bankruptcy Court's ruling

that Prunty qualified as an insider of the Debtor; 5) the Bankruptcy Court's conclusion

that the transfer allowed Prunty to recover more than she would have in a Chapter 7

liquidation; 6) the Bankruptcy Court's failure to give full faith and credit to the Final

Decree; and 7) the Bankruptcy Court's rejection of their affirmative defenses of *res

judicata* and collateral estoppel.

## II.   JURISDICTION

The Court has jurisdiction to hear appeals from "final judgments, orders, and

decrees" of the Bankruptcy Court.  28 U.S.C. § 158(a).  The Court also has discretion to

hear appeals from "other interlocutory orders and decrees."  *Id.* § 158(c).  Because it

found material facts in dispute as to Count VI, the Bankruptcy Court did not award

summary judgment to the Trustee for Count VI.  Nor, did the Bankruptcy Court enter

final judgment on any of the Trustee's claims pursuant to Rule 54(b) of the Federal Rules

7

of Civil Procedure as applied to bankruptcy cases by Rule 7054 of the Federal Rules of Bankruptcy Procedure. Thus, the Bankruptcy Court's Order is an award of partial summary judgment and is not a final judgment, order, or decree.

Prunty and the Trust, therefore, may appeal the Bankruptcy Court's Order dated February 20, 2009, only with leave of Court. *Id.* While no specific criteria exist to guide the Court's discretion to hear an interlocutory appeal, most district courts faced with the issue follow the standard prescribed in 28 U.S.C. § 1292(b), which governs appeals of interlocutory orders from the district courts to the courts of appeals. Under section 1292(b), the Court may consider whether the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and [whether] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Bankruptcy Court's Order involves a controlling question of law—whether the transfers may be avoided under 11 U.S.C. § 547—the resolution of which will materially advance the litigation. Therefore, the Court will grant Prunty and the Trust leave to appeal and entertain their challenges to the Bankruptcy Court's Order.

### III.   STANDARD OF REVIEW

On appeal, this Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. This Court "review[s] the bankruptcy court's legal conclusions *de novo*

8

and its factual findings for clear error." *In re Hartford Sands Inc.*, 372 F.3d 637, 639 (4th

Cir. 2004).  In cases where the issues present mixed questions of law and fact, the Court

will apply the clearly erroneous standard to the factual portion of the inquiry and *de novo*

review to the legal conclusions derived from those facts. *Gilbane Bldg. Co. v. Fed.*

*Reserve Bank*, 80 F.3d 895, 905 (4th Cir.  1996).

## IV.   ANALYSIS

**A.    The Bankruptcy Court Did not Err in Awarding the Trustee Summary**
**Judgment on Count I.**

In Count I, the Trustee seeks to avoid the transfers of the Properties as preferential

pursuant to 11 U.S.C. § 547.  The Trustee bears the burden of proving the avoidability of

the transfers under section 574(b).  Section 574(b) provides that:

> The trustee may avoid any transfer of an interest of the debtor in property—
>
>> (1) to or for the benefit of a creditor;
>> (2) for or on account of an antecedent debt owed by the debtor
>> before such transfer was made;
>> (3) made while the debtor was insolvent;
>> (4) made—
>>> (A) on or within 90 days before the date of the filing of the
>>> petition; or
>>> (B) between ninety days and one year before the date of the
>>> filing of the petition, if such creditor at the time of such
>>> transfer was an insider; and
>> (5) that enables such creditor to receive more than such creditor
>> would receive if
>>> (A) the case were a case under chapter 7 of this title;
>>> (B) the transfer had not been made; and
>>> (C) such creditor received payment of such debt to the extent
>>> provided by the provisions of this title.

9

11 U.S.C. § 547(b). The Bankruptcy Court held that the Trustee established all of the elements in § 547. In reviewing the record, the Court agrees and will affirm the Bankruptcy Court's ruling awarding summary judgment to the Trustee.

### 1.    *"Transfer of an interest of the debtor in property"*

Prunty contends that the Debtor transferred his interest in the Properties on March 2, 2005, when he signed the Marital Agreement. The Bankruptcy Court rejected Prunty's contention and ruled that the Debtor transferred his interest in the Properties on August 23, 2006—the date on which he executed the quitclaim deeds. Prunty challenges this ruling on appeal.

The Bankruptcy Code defines "transfer" as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with . . . an interest in property." 11 U.S.C. § 101(54)(D). A "transfer of real property" is deemed "perfected when a bona fide purchaser of such property from the debtor . . . cannot acquire an interest that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(A). The phrase "interest of the debtor in property" is not defined by the Bankruptcy Code. Thus, the nature of any interest of the Debtor in the Properties is governed by state law. *Matson v. Grease Monkey Int'l, Inc.*, 237 B.R. 311, 314 (Bankr. E.D. Va. 1998).

Under the terms of the Marital Agreement, which was not recorded in the land records of either Fauquier County or Chesterfield County, Prunty agreed to make cash payments to Debtor in exchange for the Debtor's interest in the Properties. Thus, the

Marital Agreement is a contract made for the conveyance or sale of real estate. Va. Code Ann. § 11-1. Under Virginia law, contracts in writing and deeds are "void to all purchasers for valuable consideration without notice not parties thereto . . . *until and except from the time it is duly admitted to record.*" Va. Code Ann. § 55-96 (emphasis added). Therefore, the Marital Agreement did not create a "transfer" under § 547 because it was not perfected by recording as required by Virginia law. Instead, the Marital Agreement provided Prunty with nothing more than an inchoate interest in the Debtor's share of the Properties, and the Debtor held his undivided one-half interest in the Properties until the transfer was perfected by recording the signed quitclaim deeds.

Under § 547(e), if a deed conveying an interest in property is recorded within thirty days of execution, the transfer of the property interest is deemed to have occurred on the date of execution. In this case, both quitclaim deeds were recorded within thirty days after the Debtor executed them. Thus, the Debtor transferred his interest in the Properties on August 23, 2006, and the Bankruptcy Court did not err by identifying the date of the transfer as such.

###### 2.    *The transfer was made "to and for the benefit of a creditor."*

Although the initial transfer was made to the Trust, the Trust promptly transferred the Properties to Prunty for no consideration. Prunty does not challenge the Bankruptcy Court's ruling that the transfer was made to or for the benefit of Prunty.[2]  Prunty,

---

[2]Prunty also does not challenge the Bankruptcy Court's ruling that the transfer was made for or on account of an antecedent debt or that the Debtor was insolvent on August 23, 2006.

11

however, does challenge the Bankruptcy Court's ruling that she qualified as a creditor of the Debtor under § 547.

The Bankruptcy Code defines "creditor" as any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). The term "claim" means the

(A) right to payment . . . or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

*Id.* § 101(5).

The Marital Agreement constituted a binding contract between Prunty and the Debtor. It imposed a legally enforceable obligation on the Debtor to transfer his interest in the Properties to Prunty in exchange for cash payments. Under the Marital Agreement, Prunty had a claim against the Debtor for his interest in the Properties, which arose before the order for bankruptcy relief was entered and for which she could obtain an equitable remedy if he failed to perform his contractual obligation. Therefore, Prunty qualifies as a creditor of the Debtor under § 547.

### 3.    *Prunty qualifies as an insider of the Debtor.*

Under the Bankruptcy Code, the term "insider" includes relatives of the debtor. *Id.* § 101(31)(A)(i). A relative is defined as an "individual related by affinity or consanguinity within the third degree as determined by the common law." *Id.* § 101(45).

Because the definition includes individuals "related by affinity," a current spouse of a debtor qualifies as a relative, but a former spouse is not considered a relative. *Miller v. Schuman*, 81 B.R. 583, 585 (B.A.P. 9th Cir. 1987). Whether an individual is an insider of the debtor is determined by the relationship between the individual and the debtor at the time of the transfer. 11 U.S.C. § 547(b)(4)(B).

In this case, the hearing on the parties' divorce proceeding was held on July 31, 2006, and the Final Decree was entered on September 13, 2006. In the time between the divorce hearing and the issuance of the Final Decree, the quitclaim deeds conveying the Debtor's interest in the Properties were recorded. Under Virginia law, a final judgment takes effect on the date on which the judgment is signed and entered by the Court. Va. Code Ann. § 8.01-2(4); Va. Sup. Ct. R. 1:1 ("The date of entry of any final judgment, order, or decree shall be the date the judgment, order, or decree is signed by the judge."). Thus, Prunty and the Debtor were not legally divorced until September 13, 2006, and Prunty remained the Debtor's spouse at the time of the transfer on August 13, 2006. Therefore, Prunty qualifies as an insider of the Debtor under § 547.

### 4.    *The transfer permitted Prunty to receive more than she would have received in a Chapter 7 proceeding.*

To prove that Prunty recovered more than she would have in a Chapter 7 proceeding, the Trustee must establish that Prunty is 1) an unsecured creditor; 2) with a non-priority claim; and 3) that the estate will not distribute a 100% payout to its unsecured creditors. *Matson v. Grease Monkey Int'l, Inc.*, 237 B.R. 311, 315 (Bankr.

13

E.D. Va. 1998). Prunty is an unsecured creditor of the Debtor, and her claim is not given

priority status. *See* 11 U.S.C. § 507. The parties do not dispute that unsecured creditors

of the Debtor's estate will receive less than a 100% payout for their claims. Thus, the

Trustee satisfied its burden under § 547(b)(5), proving that Prunty received more than she

would have in a Chapter 7 proceeding.

**B.**      **Prunty Waived Her Claim to the Full Faith and Credit of the Final Decree
because She Failed To Raise the Issue in the Bankruptcy Court.**

Prunty asserts that the Bankruptcy Court erred by not giving full faith and credit to

the Final Decree, which incorporated the terms of the Marital Agreement. The Trustee

argues that this issue is waived because Prunty is raising it for the first time on appeal.

Prunty does not cite any portion of the record in her Reply showing that she raised this

issue in the Bankruptcy Court, and the Court's review of the record reveals no reference

to this issue by Prunty in the case below. District courts will not review issues raised for

the first time on appeal except under exceptional circumstances. *In re Endicott*, 157 B.R.

255, 258 (W.D. Va. 1993). Finding no exceptional circumstances in this case, the Court

declines to review Prunty's contention that the Bankruptcy Court failed to give full faith

and credit to the Final Decree of Divorce.

**C.**      **The Bankruptcy Court Did Not Err by Rejecting Prunty's Reliance on the
Doctrines of *Res Judicata* and Collateral Estoppel.**

Prunty maintains that the Bankruptcy Court erred by rejecting her reliance on the

doctrines of *res judicata* and collateral estoppel. Prunty asserts that the Trustee's § 547

14

claim is the same cause of action decided by the Fauquier County Circuit Court in the parties' divorce proceeding. She also contends that the Circuit Court's findings as to the Debtor's interest in the Properties preclude the Trustee from re-litigating the issue in the Bankruptcy Court. The Court disagrees.

"For res judicata to prevent a party from raising a claim, three elements must be present: '(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action.'" *Ohio Valley Envtl. Coalition v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (quoting *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990)). As the Trustee correctly points out, the § 547 claim did not exist before the Debtor filed his bankruptcy proceeding on June 3, 2007, and could not have been litigated in the parties' divorce proceeding in 2006. Therefore, the doctrine of *res judicata* is inapplicable to the Trustee's claim.

"For the doctrine [of collateral estoppel] to apply, the parties to the two proceedings, or their privies, must be the same; the factual issue sought to be litigated actually must have been litigated in the prior action and must have been essential to the prior judgment; and the prior action must have resulted in a valid, final judgment against the party sought to be precluded in the present action." *TransDulles Ctr. v. Sharma*, 252 Va. 20, 22–23, 472 S.E.2d 274, 275 (Va. 1996). In this case, the Trustee is seeking to avoid preferential transfers of property interests between the Debtor and Prunty. The factual issues related to whether the transfer was indeed preferential were not litigated in

15

the parties' divorce proceedings. Therefore, Prunty's defense of collateral estoppel is inappropriate in this case.

## V. Conclusion

The Trustee established all of the requisite elements of § 547 to enable it to avoid the preferential transfer of the Properties to Prunty. Prunty has not shown that any of the defenses delineated in § 547(c) are applicable to this case. Finding neither legal nor factual error in the Bankruptcy Court's ruling, the Court will affirm the Bankruptcy Court's decisions as to Counts I and V of the Trustee's Complaint, and the Court will remand the case to the Bankruptcy Court for further proceedings related to Count VI of the Trustee's Complaint.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

ENTERED this ___ day of ___ 2005.
Richmond, VA

16